UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TRACY ADAMS, on behalf of
herself and others similarly situated,

        Plaintiff,

v.

        Case No. 18-12731
        Honorable Denise Page Hood

SETERUS, INC.,

        Defendant.
_____/

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS [Dkt. No. 7]

**I.    INTRODUCTION**

On September 4, 2018, Plaintiff filed a two-count Complaint alleging violations of the Fair Debt Collection Practices Act ("FDCPA") and the Michigan Regulation of Collection Practices Act ("MRCPA"). On November 1, 2018, Defendant filed a Motion to Dismiss the Complaint. Dkt. No. 7. The Motion has been fully briefed, and a hearing was held on December 19, 2018. For the reasons that follow, the Motion to Dismiss is granted in part and denied in part.

**II.    STATEMENT OF FACTS**

Plaintiff owns a residential home located at 8890 Burlingame Avenue, SW, Byron Center, Michigan. Dkt. No. 1 at ¶ 20. The home is secured by a mortgage

1

owned, backed, or controlled by Federal National Mortgage Association ("Fannie Mae") that is serviced by Defendant. *Id*. at ¶ 21. Defendant acquired the servicing rights to Plaintiff's Fannie Mae-owned loan from CitiMortgage when the loan was in a state of default. *Id*. at ¶ 27-29. As a mortgage servicer, Defendant contracts with Fannie Mae to collect payments, fees, and other amounts owed by the home owner and to provide other services to investors relating to the home owner's loan. *Id*. at ¶ 24. Pursuant to its agreement with Fannie Mae, Seterus provides notices to Plaintiff and consumers like Plaintiff using a form letter that is identified in the Complaint as the "Michigan Final Letter." *Id*. at ¶¶ 47-48.

The Michigan Final Letter includes the following language:

A. THIS COMMUNICATION IS FROM A DEBT COLLECTOR AS WE SOMETIMES ACT AS A DEBT COLLECTOR.

B. If full payment of the default amount is not received by us . . . on or before [the Expiration Date], we will accelerate the maturity date of your loan and upon such acceleration the ENTIRE indebtedness of the loan, including principal, accrued interest, and all other sums due thereunder, shall, at once and without further notice, become immediately due and owing.

C. If you send only a partial payment, the loan will still be in default and we may keep the payment. Additionally, we will keep the payment and may accelerate the maturity date.

D. IF THE DEFAULT IS NOT CURED ON OR BEFORE THE EXPIRATION DATE, THE LOAN OWNER AND WE INTEND TO ENFORCE THE LOAN OWNER'S RIGHTS AND REMEDIES AND MAY PROCEED WITHOUT FURTHER NOTICE TO COMMENCE

>   FORECLOSURE PROCEEDINGS.
>
>   E.  You have the right to reinstate your loan after acceleration and the right to bring a court action or assert in the foreclosure proceedings the nonexistence of a default or any other defense to acceleration and sale. If you reinstate your loan after acceleration, the loan no longer will be immediately due in full.

Dkt. No. 1 at Ex. A (and Ex. B, C, D, E, F, and G). *See also* Dkt. No. 1 at ¶¶ 49, 50, 51, 78.

In 2016, a "legal mediation officer" (*i.e.*, a Rule 30(b)(6) witness) designated by Defendant testified in another case (*Hager v. Seterus, Inc.*, 1:15-cv-222 (W.D.N.C.)) as follows:

>   Q.  My understanding of your testimony just now is that if Seterus receives a payment in response to an NC Final, then the debt is no longer 45 days due and so that's sufficient to hold off the acceleration process?
>
>   A.  That's correct.
>
>   Q.  Okay. And is that -- is that Seterus' policy just with regard to North Carolina?
>
>   A.  Seterus' policy for the loans where we are accepting payments and we're able to apply full contractual payment to the loan.
>
>   Q.  Okay. So in response to a letter like Exhibit 11 [a Seterus North Carolina Final Letter], Seterus' policy, if they're accepting payments, is if they receive an amount equal to a normal monthly payment, they will not accelerate the debt?
>
>   A.  As long as, right, it brings the loan less than 45 days due.
>
>   Q.  Okay. Where does it say that in this letter that if you make one payment

> or enough such that one payment is recorded, we won't do this, or does it say that?
>
> A. Well, the expiration date provides really the -- the timeline where the customer needs to make some sort of payment so that the 45 days are not past due.
>
> Q. Not some sort of payment, $3,204.72, that's what it says, right?
>
> A. Yes. And we're allowing the customer, we're also -- yes. We would like the $3,204.72. But our objective is not to foreclose on our customers. Our objective is to be able to take -- even if it's a partial payment, if where -- if 'in the bucket where a partial payment can be made, our objective is to collect that payment to help them stay in their house. Because them making payments, staying in their house helps us in our business as well. Foreclosing on them is really not, you know, helpful to us nor to them.
>
> Q. Yeah.
>
> A. And so therefore, this letter is sent out per the guidelines that are outlined and we allow the customer -- we allow the customer to make that partial payment. And then when a full -- if a partial payment does not equal the contractual payment, then your -- then this letter still -- still stands. But because a contractual payment is able to be applied to the loan account, then we don't have to continue with the -- this letter.
>
> [Seterus Dep. at pp. 177:11-180:10].

Dkt. No. 1 at ¶ 57.

## III. LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the plaintiff's complaint. Accepting all factual allegations as true, the court will review the complaint in the light most favorable to the plaintiff. *Eidson v. Tennessee Dep't of*

4

*Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007). As a general rule, to survive a motion to dismiss, the complaint must state sufficient "facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The complaint must demonstrate more than a sheer possibility that the defendant's conduct was unlawful. *Id.* at 556. Claims comprised of "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## IV. ANALYSIS

### A. Count I - FDCPA Claim

Defendant contends that Plaintiff lacks standing to assert her claims and, even if she has standing, she has failed to allege a violation of the FDCPA.

#### 1. Standing

Article III standing requires that a plaintiff show that she: "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1547 (2016). Defendant does not argue that Plaintiff has

failed to satisfy the first element by not alleging an injury in fact. Defendant asserts that Plaintiff has not identified any injury in fact that is traceable to the statements made by Defendant in the Michigan Final Letter.

Defendant contends that any "anxiety, stress, anger, frustration, and mental anguish" suffered by Plaintiff was solely "caused by her own default and [Defendant]'s contractually-required notification of its right to accelerate and foreclose based on that default[.]" Defendant asserts that Plaintiff fails to plausibly allege that the anxiety was the direct result of Defendant's method of determining whether to accelerate a loan following receipt of a payment for less than the full amount due. The Court rejects Defendant's argument.

Plaintiff has alleged that the injury she suffered ("anxiety, stress, anger, frustration, and mental anguish") was attributable to Defendant making false or misleading threats of acceleration and foreclosure in the Michigan Final Letter. *See, e.g.,* Dkt. No. 1 at ¶¶ 61-72. Plaintiff alleges that such false and/or misleading representations by Defendant, which were particularized to Plaintiff when she received the Michigan Final Letter, could cause Plaintiff (and persons like her) to believe she (they) would lose her (their) home(s) if she (they) did not pay an amount greater than the amount demanded by Defendant, even though that is not Defendant's actual policy. Plaintiff has alleged that Defendant's misrepresentations have the

6

potential to induce individuals to send money that they may need to utilize for "other necessary expenditures, including food and utility payments." *Id.* at ¶ 67. This is sufficient. *See Gillie v. Law Office of Eric A. Jones, LLC*, 785 F.3d 1091, 1097 (6th Cir. 2016), *rev'd on other grounds, Sheriff v. Gillie*, 136 S.Ct. 1594 (2016) ("An inherent danger posed by harassing or deceptive collection practices is that consumers will be pressed into making uninformed decisions about debt prioritization, which affects their daily lives."). *See also Martin v. Trott Law, P.C.*, 265 F.Supp.3d 731, 747-48 (E.D. Mich. 2017). Plaintiff also has alleged that Defendant has misrepresented that Plaintiff could raise defenses in a foreclosure by advertising proceeding, which is not accurate. *See, e.g.*, Dkt. No. 1 at ¶¶ 79-85. Plaintiff alleges that those representations may "induc[e] homeowners into inaction or delay in asserting possible defenses, such that they may wrongfully lose their homes as a result." *Id*. at 85. *See also Martin*, 265 F.Supp.3d at 747 (deceptive communications could lead a plaintiff to "make decisions detrimental to his personal financial position or legal rights that he otherwise would [not] make, if he were fully and accurately informed").

For the reasons stated above, Defendant's argument that any injury suffered by Plaintiff is attributable solely to her default on her mortgage and loan is misplaced in its motion to dismiss. Defendant's argument would require the Court to make a

finding of fact, but the Court does not weigh factual disputes at this juncture of the proceedings (on a motion to dismiss). Based on Plaintiff's allegations, the Court finds that Plaintiff has alleged a concrete harm attributable (fairly traceable) to the Michigan Final Letter sent by Defendant. The Court concludes that Plaintiff has standing to bring this cause of action.

    2.    *Viability of Plaintiff's FDCPA Claims*

Defendant contends that Plaintiff has failed to allege or "identify any act or omission by [Defendant] that violated the FDCPA." Dkt. No. 7, PgID 76. Section 1692e of the FDCPA forbids the use of any "false, deceptive, or misleading representation or means in debt collection," including "(5) The threat to take any action that cannot legally be taken or **that is not intended to be taken**" or "(10) The use of any false representation or deceptive means to collect or attempt to collect any debt . . ." (emphasis added).

Defendant argues that there is no allegation that Defendant lacked the right to accelerate Plaintiff's loan or would not have accelerated the loan if Plaintiff had ignored the Michigan Final Letter. In her Complaint, Plaintiff alleges that Defendant violated § 1692 of the FDCPA because:

> The Michigan Final Letters create a false sense of urgency by threatening to accelerate the entire indebtedness of a consumer's loan if "full payment of the default amount is not received . . . on or before the Expiration Date," when Seterus' actual policy, attested to in sworn

8

testimony by a company officer, is to not accelerate loans that are less than 45 days delinquent.

Dkt. No. 1, at ¶ 54. Although a North Carolina district court case is not binding on the Court, *see, e.g., Interactive Solutions Group, Inc. v. Autozone Parts, Inc.*, 2012 WL 1288173, at *3 (E.D. Mich. Apr. 16, 2012), the Court relies on the reasoning set forth in *Koepplinger v. Seterus, Inc.*, 2018 WL 4055268 (M.D. N.C. Aug. 24, 2018), where the plaintiff received a letter from Defendant substantively similar to the Michigan Final Letter. In denying a motion to dismiss, the *Koepplinger* court stated:

> In other words, the Amended Complaint alleges that the NC Final Letter falsely informs debtors that, on pain of acceleration and foreclosure, they must pay the entire specified default amount by the Expiration Date, when, in reality, to forestall acceleration and foreclosure under Defendant's corporate policy, they need only pay enough of the default amount (and/or of any other intervening charges) to bring their loans less than 45 days past due by the Expiration Date. Accepting these allegations as true, they plausibly allege violation of Section 1692e.

*Koepplinger*, 2018 WL 4055268, at *6. The *Koepplinger* court continued:

> Even under Defendant's theory, failure to render "full payment of the default amount . . . on or before the Expiration Date" (Docket Entry 19, ¶ 38 (emphasis added)) could constitute the "whatever reason" that a payment "did not quite bring the loan current as of the date [Defendant] received [it]" (Docket Entry 19 at 8). As a result, because (according to its Rule 30(b)(6) deposition) Defendant does not accelerate loans in such circumstances (see Docket Entry 16, ¶ 41), a reasonable fact-finder could conclude that the NC Final Letter contains misstatements that "would have been *important* to the consumer *in deciding how to respond* to efforts to collect the debt," Powell, 782 F.3d at 127 (emphasis in original). As such, accepting as true the allegations in the Amended Complaint, the NC Final Letter could qualify as "false misleading, or

9

deceptive in violation of [Section] 1692e." id. at 126 (internal quotation marks omitted).

*Koepplinger*, 2018 WL 4055268, at *7.

For the reasons set forth above and as explained by the *Koepplinger* court, the Court finds that Plaintiff has adequately alleged an FDCPA claim based on alleging that the Michigan Final Letter threatens foreclosure proceedings that Defendant would not pursue if Plaintiff paid less than the amount demanded in the Michigan Final Letter.

Defendant next argues that language in the Michigan Final Letter is accurate and not misleading because a debtor has the right to bring a court action to assert defenses. *Manufacturers Hanover Mortg. Corp. v. Snell*, 370 N.W.2d 401, 404 (Mich. App. 1984) (emphasis added). That languages states that, if Plaintiff defaulted, she had "the right to bring a court action **or** assert in the foreclosure proceedings the nonexistence of a default or any other defense to acceleration" Defendant argues that Plaintiff conveniently ignores the "or" in the cited language, which is important because there is no dispute that a debtor has the right to bring a court action (rendering irrelevant whether a debtor can assert any defenses in a foreclosure by advertising proceeding). Defendant also asserts that a debtor can convert a foreclosure by advertisement into judicial foreclosures and assert their defenses there. *Id.*

For the reasons argued by Defendant, the Court dismisses Plaintiff's FDCPA

claim to the extent she relies on allegations that the Michigan Final Letter's language that Plaintiff would have "the right to bring a court action or assert in the foreclosure proceedings the nonexistence of a default or any other defense to acceleration" was deceptive and misleading. As the language expressly provides, a debtor can bring a court action "or" raise defenses in foreclosure proceedings. A debtor can bring a court action no matter what, so even if certain defenses may not be permissible in a foreclosure proceeding, the provision is accurate and not inaccurate. Accordingly, Plaintiff's reliance on the alleged deceptiveness of the second clause of that sentence is not persuasive.

The Court grants in part and denies in part Defendant's motion to dismiss Plaintiff's FDCPA claim. The Court: (1) concludes that Plaintiff may proceed with her FDCPA claim related to the accelerating foreclosure proceedings, including the class action claims thereunder, *id.*; and (2) dismisses Plaintiff's FDCPA claim related to the assertion of defenses in foreclosure.

### B. Count II - MRCPA Claim

As both parties recognize, courts generally analyze MRCPA claims in the same manner as FDCPA claims when based on the same factual allegations, as the language in the MRCPA is "very similar" to the language in the FDCPA. *See, e.g., Gamby v.*

*Equifax Info. Servs., LLC*, 462 F.App'x 552, 556 n.6, 2012 U.S. App. LEXIS 3061 (6th Cir. 2012) (citing § 1692e); *Scheuer v. Jefferson Cap. Sys., LLC*, 43 F.Supp.3d 772, 786 (E.D. Mich. 2014); *Newman v. Trott & Trott, P.C.*, 889 F.Supp.2d 948, 967 (E.D. Mich. 2012). For the reasons set forth in Section IV.A., the Court grants in part and denies in part Defendant's motion to dismiss Plaintiff's MRCPA claims.[1]

Defendant also argues that Plaintiff's MRCPA claims cannot be litigated as a class action because the statute authorizing the recovery of statutory damages (M.C.L. § 445.257(2)) does not "specifically authorize[] its recovery in a class action. M.C.R. § 3.501 ("An action for a penalty or minimum amount of recovery without regard to actual damages imposed or authorized by statute may not be maintained as a class action unless the statute specifically authorizes its recovery in a class action."). Defendant concludes that, if Plaintiff's MRCPA claim is not dismissed, that claim should be allowed only to permit Plaintiff to pursue statutory damages only in her individual capacity.

Plaintiff accurately counters that, in this federal action, M.C.R. § 3.501 does not

---

[1] As Plaintiff argues, nowhere in the Michigan non-judicial foreclosure statute does it state that a person subject to foreclosure can assert defenses in a foreclosure by advertisement proceedings. M.C.L. § 600.3201 *et seq*. For that reason, the Court concludes that Plaintiff has adequately alleged that Defendant made inaccurate, misleading, false, or deceptive statements or claims in the Michigan Final Letter to collect a debt (in violation of M.C.L. § 445.252(e)) and misrepresented in the Michigan Final Letter the status of a legal action being taken or threatened, or the legal rights of the creditor or debtor (in violation of M.C.L. § 445.252(f)).

12

apply and, instead, Federal Rule of Civil Procedure 23 controls whether a class action may be pursued. Citing *Shady Grove Orthop. Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010); *American Copper & Brass, Inc. v. Lake City Indus. Prod., Inc.*, 757 F.3d 540, 546 (6th Cir. 2014) ("We agree with the district court's conclusion that MCR 3.501(A)(5) does not apply in this case."); *Martin v. Trott Law, P.C.*, 265 F.Supp.3d 731, 750 (E.D. Mich. 2017) (same).

> "[T]he Supreme Court [has] held in a case involving a conflict between Rule 23 and a New York procedural rule prohibiting class actions in cases involving a statutory penalty [that] a 'Federal Rule governing procedure is valid whether or not it alters the outcome of the case in a way that induces forum shopping,'" and it "therefore reject[ed] [the defendant's] argument that the district court erred in declining to apply MCR 3.501(A)(5)." [*American Copper & Brass*,] 757 F.3d at 546 (affirming denial of motion to dismiss class action claims under the TCPA premised on Mich.Ct. Rule 3.501(A)(5)) (citing *Shady Grove*, 559 U.S. at 46, 130 S.Ct. 1431).

*Martin*, 265 F.Supp.3d at 750.

The Court: (1) concludes that Plaintiff may proceed with her MRCPA claim related to the accelerating foreclosure proceedings, including the class action claims thereunder, *id.*; and (2) dismisses Plaintiff's MRCPA claim related to the assertion of defenses in foreclosure.

## V. CONCLUSION

For the reasons set forth above,

IT IS ORDERED that Defendant's Motion to Dismiss [Dkt. No. 7] is

13

GRANTED IN PART and DENIED IN PART.

IT IS FURTHER ORDERED that Plaintiff may proceed with her FDCPA and MRCPA claims related to the accelerating foreclosure proceedings, including the class action claims thereunder.

IT IS FURTHER ORDERED that Plaintiff's FDCPA and MRCPA claims related to the assertion of defenses in foreclosure are DISMISSED.

IT IS ORDERED.

s/Denise Page Hood<br>United States District Judge

Dated: September 27, 2019